Otis CLAIBORNE and Vivian Claiborne, both personally as taxpayers, and as parents, guardians and next friends of David Claiborne, a minor; Dexter Barnes and Ellen Barnes, both personally as taxpayers, and as parents, guardians and next friends of James Barnes, a minor; Laveda Freeman, both personally and as taxpayer and as parent, guardian and next friend of Brian Freeman, a minor; Jim Squires and Kay Squires, both personally and as parents, guardians and next friends of Steve Squires, a minor; and Kay Squires, as a taxpayer of the Beebe School District, Plaintiffs,

v.

BEEBE SCHOOL DISTRICT, a body corporate; Floyd Marshall, both personally and in his official capacity as Superintendent of Schools, Beebe School District; Leroy Goff, David Choate, Ronald Madding, Walt Priest and Tom Jenkins, both personally and in their official capacities as Members of the Beebe School Board; Max Graham, both personally and in his official capacity as Principal of Beebe High School; and John Doe/Jane Doe, an unknown adult, both personally and in his official capacity, if any, with the Beebe School District, Defendants.

No. LR–C–87–842.

United States District Court, E.D. Arkansas, W.D.

July 6, 1988.

Darrell F. Brown, Little Rock, Ark., for plaintiffs.

Dan F. Bufford, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

On November 30, 1987, plaintiffs, the parents of the minor plaintiffs who were students at Beebe High School, filed suit on their sons' behalf under 42 U.S.C. § 1983 alleging constitutional violations by the actions of the defendants in reporting and investigating the minor plaintiffs' consumption of alcohol prior to a football game and in the suspension and ultimate expulsion of the minor plaintiffs for the semester. Trial commenced on June 20, 1988, and the parties rested the afternoon of June 24th.

On September 11, 1987, the minor plaintiffs, along with two other students, each consumed several sips of orange juice mixed with vodka enroute from Beebe to Batesville to attend the Friday night football game between the two schools. After throwing the beverage out of the car approximately seventy-five (75) miles from Batesville, the minor plaintiffs stopped at a Burger King where they ate dinner for 30–45 minutes. At the game, the minor plaintiffs were not disruptive and the only Beebe school officials who observed something different about them were two teachers who thought they were acting like they wanted to be noticed. However, two girls who were sitting with the boys at the game felt that they had been drinking and so discussed it with them. Thereafter, the two girls discussed the situation with another student who told her teacher the next day at a social event. Also on Saturday one of the minor plaintiffs during a telephone conversation with a female student was overheard by one of her friends admitting that they had been drinking before they came to the game. On Sunday, the principal received an anonymous telephone call from a female advising of the minor plaintiffs' conduct and the possible violation of school policy. On Monday morning, September 14th, the principal received word from a teacher that two students who had attended the game said possible drinking had occurred. Upon learning the names of the minor plaintiffs, the principal called each one to his office where the minor plaintiff, after initially denying involvement, admitted to drinking enroute to the game. The minor plaintiffs were each suspended for ten (10) days and ultimately expelled by the school board, after a hearing, for the fall semester.

Plaintiffs are seeking a declaratory judgment that the alcohol and drug policy as contained in the current Beebe High School Student Handbook violates the Fourteenth Amendment right to due process since the language is overly broad and vague. The preamble to this policy provides in part that "[s]tudents in violation of the alcohol and drug policy will be expelled for the semester with loss of all credit for work done

during that semester." The specific provision of the policy at issue here is Subparagraph E which states "[u]pon verification by local authorities, self-admittance, or substantiated evidence, any student using alcohol or drugs prior to coming on school grounds or to school sponsored events *will be* expelled from school for one semester." (Emphasis in the original).

Plaintiffs challenge certain words and phrases in that provision as being vague and so imprecise that the students did not have proper notice as to what would constitute a violation and that it was subject to varying and potentially arbitrary interpretations. They further contend that since specific definitions of terms are missing, this provision is facially so overly broad as to govern conduct outside the scope of the school's authority. Defendants assert that the language of the policy provides sufficient and adequate notice such that the ordinary student would be able to conform his conduct to the policy and that a court may not substitute its notion of how a policy is to be defined from the school board's.

The Court is aware that it cannot impose its interpretation of school regulations in place of a school board's construction of its regulations. *Board of Education of Rogers, Ark v. McCluskey,* 458 U.S. 966, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982). However, the question here is whether certain terms in the policy sufficiently defined what conduct was prohibited as to give adequate notice to the students. See, *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Bystrom v. Fridley High Sch., Ind. Sch. Dist. 14,* 822 F.2d 747 (8th Cir.1987); *Anable v. Ford,* 653 F.Supp. 22 (W.D.Ark.1985).

Applying this standard, the Court must find that Subparagraph E of the alcohol and drug policy contained in the current Beebe High School Student Handbook violates the due process clause of the Fourteenth Amendment to the United States Constitution as being void for vagueness and so is therefore unconstitutional. Specifically, the Court finds the term "prior to" to be so general and without sufficient

definiteness so that ordinary students can understand and have adequate notice as to what conduct is prohibited. The ordinary meaning of that term is "before" or "in advance of". *Webster's Third New International Dictionary,* unabridged, (1976). Without further definition, one is left to wonder exactly that time period is sought to be covered by this term; does it mean minutes, an hour, several hours, a day, two days or even a longer period of time? This Court's conclusion is further justified by the testimony adduced at trial. When each witness was asked what "prior to" meant, each stated "before" and then further questioning was needed as to the time period that included. Needless to say, the time period varied from minutes to hours and to days and even weeks. Leroy Goff, the school board president, testified that "prior to" can mean anything a board member wants it to mean. Vivian Claiborne related that Walt Priest, who was a board member, stated that he felt the term "prior to" was vague and overly broad, but with the admissions of the students he had no choice except to vote for explusion. Paul Blume, Esq., testified that "prior to" could include a period of five days if the consumption consumption of alcohol five days earlier affected the school activity. Ronald Madding, another school board member, admitted that there was nothing in the policy which clearly defined "prior to" and that the Board has flexibility which it needs to define the term and the common sense of the board members qualifies when the time period encompassed by the term starts and stops.

This same testimony also supports the conclusion that the terms "prior to" is overly broad since it can include behavior which occurred days previously and with the permission of the parents and which did not affect the behavior of the students on school grounds or the school sponsored event and did not even include the smell of alcohol on the student. Furthermore, the evidence clearly shows that this vagueness and breadth permits and even encourages arbitrary interpretation and enforcement.

Thus, Subparagraph E of the policy is unconstitutional on its face. In light of these findings, it is not necessary for the Court to address the other terms alleged to be constitutionally deficient. The Court is persuaded that the school board is aware of the criticims of certain terms and phrases and will keep those in mind when drafting future drug and alcohol policies. Although Subparagraph E is facially unconstitutional and so the validity of its application to these students does not have to be resolved, the Court would add, that if called upon to decide this application issue, the Court would find that the policy as applied to these studens was not valid. This decision would be based on the testimony referred to above as to the imprecise nature of the time period involved, the lack of objective criteria for determining "prior to" and the arbitrariness of each member determining his own definition.

Accordingly, judgment is hereby entered in favor of plaintiffs declaring that Subparagraph E of the Beebe High School alcohol and drug policy as contained in the current student handbook violates the Fourteenth Amendment right to due process since it is vague and overly broad and so is unconstitutional. The defendants, their agents and employees are hereby permanently enjoined from enforcing the provisions of Subparagraph E of the Beebe High School alcohol and drug policy as contained in the current student handbook.

## JUDGMENT

In accordance with the order entered this date, judgment is entered in favor of plaintiffs declaring that Subparagraph E of the Beebe High School alcohol and drug policy as contained in the current student handbook violates the Fourteenth Amendment right to due process since it is vague and overly broad and so is unconstitutional. The defendants, their agents and employees are hereby permanently enjoined from enforcing the provisions of Subparagraph E of the Beebe High School alcohol and drug policy as contained in the current student handbook.

After the Court announced its ruling finding that Subparagraph E was unconstitutional, the issue of damages for the minor plaintiffs was submitted to the jury. On June 27, 1988, the jury returned a verdict in favor of the minor plaintiffs and

against the defendants awarding each minor plaintiff the sum of $625.00. In accordance with the jury verdict, judgment is entered in favor of David Claiborne and against the defendants in the amount of $625.00, in favor of James Barnes and against the defendants in the amount of $625.00, in favor of Steve Squires and against the defendants in the amount of $625.00, and in favor of Brian Freeman and against the defendants in the amount of $625.00.